TRACEY A. KENNEDY, Cal. Bar No. 150782
tkennedy@sheppardmullin.com
MORGAN P. FORSEY, Cal. Bar No. 241207
mforsey@sheppardmullin.com
MARLENE M. NICOLAS, Cal. Bar No. 245298
mnicolas@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4109
Telephone:  415-434-9100
Facsimile:   415-434-3947

Attorneys for Defendants Taco Bell Corp.
and Taco Bell of America, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DUGGAN, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"), | Case No. CV 11 5806 (MEJ) |
| Plaintiff, | **DEFENDANTS TACO BELL CORP. AND TACO BELL OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT F.R.C.P. 12(B)(3), OR IN THE ALTERNATIVE, TO STAY OR TRANSFER PURSUANT TO THE "FIRST TO FILE" RULE OR ALTERNATIVELY, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(A)** |
| v. | |
| TACO BELL CORP., a California corporation; TACO BELL OF AMERICA, INC. a Delaware corporation; and DOES 1 through 10, inclusive, | |
| Defendants | |
| | [Filed concurrently with Defendants' Request for Judicial Notice and Proposed Order] |
| | **Date:    January 19, 2012**<br>**Time:   10:00 a.m.**<br>**Place:  San Francisco Courthouse, Courtroom B - 15th Floor 450 Golden Gate Avenue, San Francisco, CA 94102** |
| | [Complaint Filed:  Sept. 21, 2011] |

-1-

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS, STAY OR TRANSFER

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT.......................................3

II. RELEVANT FACTS AND PROCEDURAL HISTORY ....................................4

    A.    Duggan's Employment with Taco Bell ....................................................4

    B.    Duggan's First Lawsuit Against Taco Bell.................................................4

    C.    Duggan's Second Lawsuit Against Taco Bell – This Instant Action – Duggan Class Action.................................................................6

III. THE COURT SHOULD DISMISS, STAY, OR TRANSFER THIS CASE TO THE EASTERN DISTRICT IN DEFERENCE TO *IN RE TACO BELL* 8

    A.    This Court Should Apply The "First-To-File" Rule Because The Eastern District In *In Re Taco Bell* Is Already Adjudicating Substantially Similar Issues As Those Presented In This Action...........8

        1.    In re Taco Bell Was Filed First.................................................10

        2.    The Parties Are Identical ............................................................10

        3.    The Actions Allege Virtually Identical Causes Of Action.........11

    B.    There Is No Reason Why To Decline To Follow The First-To-File Rule ...................................................................................................13

    C.    Dismissal Is Proper In The Instant Case .................................................13

    D.    At A Minimum, Transfer To The Eastern District Is Warranted for Reasons of Comity and Judicial Economy.......................................14

IV. IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT PER 28 U.S.C. § 1404(A).................................................................................................................15

    A.    This Action Could Have Been Brought In The Eastern District .........17

    B.    This Action Should Be Transferred To The Eastern District ...............18

        1.    The Eastern District Has Invested Significant Time and Resources into In re Taco Bell.....................................................19

        2.    This Court Has No Greater Interest in This Litigation Than The Eastern District .................................................................22

    C.    Transfer Will Not Prejudice or Unduly Inconvenience Duggan ..........23

        1.    Plaintiff's Choice of Forum Is Entitled to Little Deference........23

W02-WEST:1MMN1\404200303.5

2.   Litigating in the Eastern District Will Not Unduly Burden Duggan ..................................................................................24

V. CONCLUSION ..................................................................................25

W02-WEST:1MMN1\404200303.5

# TABLE OF AUTHORITIES

Page(s)

Cases

Adam v. Jacobs
    950 F.2d 89 (2d Cir. 1991) ........................................................................9

Alltrade, Inc. v. Uniwield Products, Inc.
    946 F.2d 622 (9th Cir. 1991) ..............................................................10, 13

Burger King Corp. v. Rudzewicz
    471 U.S. 462 (1985) .............................................................................18

Cent. States Indus. Supply, Inc. v. McCullough
    218 F. Supp. 2d 1073 (N.D. Iowa 2002) ....................................................13

Colo. River Water Conservation Dist. v. United States
    424 U.S. 800 (1976)..............................................................................9

Commodity Futures Trading Comm'n v. Savage
    611 F.2d 270 (9th Cir. 1979) .................................................................18

Cronos Containers, Ltd. v. Amazon Lines, Ltd.
    121 F. Supp. 2d 461 (D. Md. 2000)..........................................................9

Decker Coal Co. v. Commonwealth Edison Co.
    805 F.2d 834 (9th Cir. 1986) ........................................................19, 22, 23

Dorado v. Laborers Pension Trust Fund for N. Cal.
    2006 WL 2402006 (E.D. Cal. 2006) .......................................................19

Dumas v. Major League Baseball Properties
    52 F. Supp. 2d 1183 (S.D. Cal. 1999) ......................................................12

EEOC v. Univ. of Pa.
    850 F.2d 969 (3d Cir. 1988) ..................................................................13

First City Nat'l Bank,
    878 F.2d at 79 ....................................................................................13

Gatton v. T-Mobile USA, Inc., ...............................................................20, 21
    2003 WL 22387598

Georgouses v. NaTec Resources, Inc.
   963 F. Supp. 728 (N.D. Ill. 1997)................................................................24

Hoffman v. Blaski
   363 U.S. 335 (1960)................................................................................17

IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A.
   730 F. Supp. 1278 (S.D.N.Y. 1990)............................................................24

Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.
   544 F. Supp. 2d 949 (N.D. Cal. 2008)........................................................10

Italian Colors Rest. v. Am. Express Co.
   2003 WL 22682482 (N.D. Cal. 2003).........................................................23

J. Lyons & Co. Ltd. v. Republic of Tea, Inc.
   892 F. Supp. 486 (S.D.N.Y. 1995).............................................................13

Jacobson v. Hughes Aircraft Co.
   105 F.3d 1288 (9th Cir. 1997)...................................................................20

Jones v. GNC Franchising, Inc.
   211 F.3d 495 (9th Cir. 2000)...................................................16, 22, 23, 25

Kahn v. General Motors Corp.
   889 F.2d 1078 (Fed. Cir. 1989)...................................................................9

Kelmar v. Mortgage Electronic Registration Sys., Inc.
   2009 WL 1298540 (N.D. Cal. 2009)...........................................................15

Kerotest Mfg. Co. v. C-0 Two Fire Equip. Co.
   342 U.S. 180 (1952)..................................................................................9

L. Cohen Group v. Herman Miller, Inc.
   2006 U.S. Dist. LEXIS 2301 (N.D. Cal. 2006)............................................10

LG Elecs., Inc. v. Advance Creative Computer Corp.
   131 F. Supp. 2d 804 (E.D. Va. 2001).........................................................21

Lou v. Belzberg
   834 F.2d 730 (9th Cir.1987)......................................................................23

Madani v. Shell Oil Co.
   2008 WL 268986 (N.D. Cal. 2008).............................................................21

W02-WEST:1MMN1\404200303.5

Meru Networks v. Extricom Ltd., No. C-10-02021 RMW
    2010 WL 3464315 (N.D. Cal. 2010) ............................................................... 8, 9

Metz v. U.S. Life Ins. Co. in City of N.Y.
    674 F. Supp. 2d 1141 (C.D. Cal. 2009) ...................................................... 16, 23

Mission Ins. Co. v. Puritan Fashions Corp.
    706 F.2d 599 (5th Cir. 1983) ........................................................................ 13

Nutrition & Fitness, Inc. v. Blue Stuff, Inc.
    264 F. Supp. 2d 357 (W.D.N.C. 2003) ......................................................... 21

Pacesetter Systems, Inc. v. Medtronic, Inc.
    678 F. 2d 93 (9th Cir. 1982) ...................................................... 8, 9, 11, 13, 14

Peak v. Green Tree Financial Serv. Corp.
    2000 WL 973685 (N.D. Cal. 2000) ............................................................... 15

Persepolis Enter. v. United Parcel Service, Inc.
    2007 WL 2669901 (N.D. Cal. 2007) ............................................................. 15

Pratt v. Rowland
    769 F. Supp. 1128 (N.D. Cal. 1991) ............................................................. 18

Reese v. CNH Am. LLC
    574 F.3d 315 (6th Cir. 2009) ........................................................................ 25

Regents of the Univ. of Cal. v. Eli Lilly & Co.
    119 F.3d 1559 (Fed. Cir. 1997) .......................................................... 16, 21, 24

Saleh v. Titan Corp.
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) ......................................................... 23

Samsung Elecs. Co. v. Rambus Inc.
    386 F. Supp. 2d 708 (E.D. Va. 2005) ............................................................ 22

Sasco v. Byers
    2009 U.S. Dist. LEXIS 36886 (N.D. Cal. 2009) ....................................... 8, 11

Stewart Org. v. Ricoh Corp.
    487 U.S. 22 (1988) ........................................................................................ 16

In re TS Tech USA Corp.
    551 F.3d 1315 (Fed. Cir. 2008) .................................................................... 24

-v-

Van Dusen,
     376 U.S. at 616 ................................................................................16

Walker v. Progressive Casualty Ins. Co.
     2003 U.S. Dist. LEXIS 7871 (W.D. Wash. 2003)................................11

Ward v. Follett Corp.
     158 F.R.D. 645 (N.D. Cal. 1994) .......................................................11

Washington Metro. Area Transit Auth. v. Ragonese
     617 F.2d 828 (D.C. Cir. 1980)...........................................................14

West Gulf Maritime Assoc. v. ILA Deep Sea Local 24, South Atl. and Gulf
     Coast District of the ILA; AFL-CIO,
     751 F.2d 721, 729 (5th Cir. 1985) .....................................................14

Wireless Consumers Alliance v. T-Mobile USA, Inc.
     2003 WL 22387598 (N.D. Cal. 2003)........................18, 20, 21, 22, 24

Statutes

28 U.S.C. § 1332(d) ..................................................................................18

28 U.S.C. § 1391(a) ..................................................................................18

28 U.S.C. § 1391(c) ..................................................................................18

28 U.S.C. § 1404(a) ..........................................2, 4, 16, 17, 19, 23, 25

California Code of Civil Procedure § 1989 ...............................................25

California Business and Professions Code §§ 17200, et seq.........5, 6, 7, 8

California Labor Code §§ 201 and 202 ...............................................6, 7

California Labor Code §§ 221 and 224 ..................................................7

California Labor Code § 1194 ............................................................6, 7

California Labor Code §§ 2800 and 2802 ...........................................6, 7

Federal Rule of Civil Procedure Rule 4(k)(1)(A)......................................17

Federal Rule of Civil Procedure Rule 12(b)(3) .........................................2

Federal Rule of Civil Procedure Rule 45(b)(2)(A).....................................25

Federal Rule of Civil Procedure Rule 45(b)(2)(C) ...................................................25

Federal Rule of Civil Procedure Rule 12(b)(6) ……………………………….…..12

Federal Rule of Civil Procedure Rule 12f …………………….…………….…..12

W02-WEST:1MMN1\404200303.5

1                                 **NOTICE OF MOTION**

2            **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3         PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. Rule 12(b)(3) and

4 28 U.S.C. § 1404(a), on January 19, 2012 at 10:00 a.m. or as soon thereafter as the

5 matter may be heard, in the Courtroom of the Honorable Maria-Elena James, United

6 States District Court for the Northern District of California, located at 450 Golden

7 Gate Ave, San Francisco, California, 95102, defendants Taco Bell Corp. and Taco

8 Bell of America, Inc. (collectively "Defendants" or "Taco Bell") will and hereby do

9 move the Court to dismiss, or in the alternative to stay or transfer, the action brought

10 against it by named plaintiff Christopher Duggan ("Duggan").  This motion is

11 brought on the grounds that a prior action involving the same issues, the same

12 named parties, and overlapping putative class members was filed first and is

13 currently pending in the Eastern District of California.  No good cause exists not to

14 follow the "first to file" rule and this action should be dismissed, or in the alternative

15 stayed or transferred.  The motion is based on this Notice and the accompanying

16 Memorandum of Points and Authorities, Defendants' Request for Judicial Notice,

17 and supporting exhibits thereto, any reply papers as may be filed, the pleadings and

18 records on file in this action, the argument of counsel at the hearing; and other such

19 matters as may be judicially noticed or come before the Court at the hearing on this

20 matter.

21                      **STATEMENT OF RELIEF SOUGHT**

22 1.     That this Court employ the first-to-file rule and dismiss, or in the alternative

23 stay or transfer, the instant matter on the grounds that a prior action involving the

24 same issues, the same named parties, and overlapping putative class members was

25 filed first and is pending in the U.S.D.C. for the Eastern District of California.

26 2.     Alternatively, Defendants seek to transfer venue to the Eastern District

27 pursuant to the Court's broad discretionary power to transfer cases between districts

28 in the interest of justice under 28 U.S.C. section 1404(a)

-2-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In filing this action, Plaintiff Christopher Duggan ("Duggan") and his counsel, Initiative Legal Group, are blatantly forum shopping and ignoring the well established "first to file" doctrine, despite their explicit knowledge of, and involvement in, the ongoing and duplicative action, In re Taco Bell, currently pending in the Eastern District. In this action, Duggan and his counsel, on behalf of a putative class, allege the same harm, seek to adjudicate the same issues and ask for the same remedies that allegedly arise out of the same nucleus of facts as they are currently litigating in the In re Taco Bell action. In fact, Duggan is not only a member of the In re Taco Bell class, but is a *named plaintiff and purported class representative*. To confound things further, Initiative Legal Group, Duggan's counsel here, is the *interim lead class counsel* in the In re Taco Bell action.

Duggan and his counsel intentionally seek to subject Defendants to the prospect of defending the same case in different district courts, obviously with the clear intent to seek a "better forum" for themselves. Such knowing conduct is an abuse of the judicial process, a waste of judicial time and resources, and is precisely why the Ninth Circuit adopted the "first-to-file" doctrine.

The "first-to-file" doctrine is applied by courts to avoid duplicative lawsuits. It permits a district court to dismiss, stay, or transfer a second-filed lawsuit in deference to the court presiding over the first-filed action. The rule promotes consistent application of rulings made by district courts and serves the policies of comity and judicial efficiency. In addition, it avoids the potential for conflicting decisions. It has long been the policy of federal courts to adhere to the "first-to-file" rule in absence of extraordinary circumstances.

Here, the absence of "extraordinary circumstances" is clear. In re Taco Bell was filed first. The parties are the same (Taco Bell Corp. and Taco Bell of America, Inc. are the defendants and Duggan is a named plaintiff in both cases). Moreover,

-3-

the central dispute in both matters, whether non-exempt employees were properly paid wages and reimbursed for expenses as required by California law, is identical. There is no question that the "first-to-file" rule applies to this case and there are no extraordinary circumstances.  As such, the Court should dismiss, or in the alternative, stay the action or transfer the action to the Eastern District.

Alternatively, Defendants seek to transfer venue to the Eastern District pursuant to the Court's broad discretionary power to transfer cases between districts in the interest of justice under 28 U.S.C. section 1404(a).  This action could have been brought in the Eastern District and should be transferred to that district because it already is handling the In re Taco Bell case, and there is no reason why this Court should be required to reinvent the wheel by starting with this case from scratch. Thus, if not dismissed or stayed, this action should be transferred to the Eastern District for coordination with In re Taco Bell.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Duggan's Employment with Taco Bell

Plaintiff Christopher Duggan initially worked for Defendants as a non-exempt hourly employee from October 2007 to August 2008.  (Request for Judicial Notice, ¶ 1, Ex. 1, ¶ 41 at 12:9-11.)  Duggan renewed his employment with Defendants as a non-exempt hourly employee, in April 2009.  (RJN, ¶ 2, Ex. 2, ¶ 24.)

### B.   Duggan's First Lawsuit Against Taco Bell

On November 29, 2010, former employee Teresa Nave filed a putative class action lawsuit against Taco Bell of America, Inc. and Taco Bell Corp.  (RJN, Ex. 3.) The lawsuit, entitled Nave v. Taco Bell of America, Inc., et al. Eastern District Case No. 10-CV-02222-OWW-DLB (the "Nave Class Action"), alleges that Taco Bell violated a number of California state wage and hour laws.  (Id.)  In that complaint, Ms. Nave seeks to represent a putative class consisting of current and former non-exempt hourly Taco Bell employees who worked for Taco Bell in California. Specially, Ms. Nave alleges that Taco Bell failed to pay her, and putative class

-4-

1  members, all accrued and unused vacation pay at separation, and failed to provide

2  them with rest periods in accordance with California law.  (Id.)  Ms. Nave further

3  alleges that she and putative class members are owed statutory "waiting time"

4  penalties for failure to pay all wages due at separation of employment and she seeks

5  restitution of all funds allegedly withheld under California Business and Professions

6  Code sections 17200, et seq.  (Id.)

7       On November 29, 2010, Ms. Nave filed a Notice of Related Case, in which

8  she related the Nave Class Action to the putative class action lawsuit In re Taco Bell

9  Wage and Hour Actions ("In re Taco Bell") pending in the Eastern District of

10  California, Case No. CV-F-07-1314 OWW-DLB.  (RJN, ¶ 4, Ex. 4.)  Ms. Nave

11  represented to the Court that the Nave Class Action is related to In re Taco Bell

12  because it involves the same defendants (Taco Bell Corp. and Taco Bell of America,

13  Inc.), it arises from the same or substantially similar transactions, occurrences and

14  events, or involves similar or identical claims, and calls for a determination of the

15  same or substantially similar questions of law and fact.  (RJN, Ex. 4, 2:1-11.)

16       On December 9, 2010, Ms. Nave filed a First Amended Complaint, adding

17  current Taco Bell employee Christopher Duggan, the named plaintiff in the instant

18  action, as a named plaintiff in the Nave Class Action.  (RJN, Ex. 3.)  The original

19  Complaint was not otherwise amended and the causes of action remained the same.

20       On December 14, 2010, pursuant to a stipulation of the parties, the Eastern

21  District entered an order consolidating the Nave Class Action with In re Taco Bell,

22  pursuant to the Court's June 9, 2009, Pretrial Order Regarding Consolidation of

23  Pending Actions and Appointment of Initiative Legal Group LLP As Interim Lead

24  Counsel.  (RJN, Ex. 4 - May 19, 2009 Memorandum of Decision and Order

25  Granting Defendants' Motion for Consolidation.)  Initiative Legal Group LLP,

26  interim lead counsel in the In re Taco Bell matter, is Duggan's counsel in the instant

27  case.

28       On May 17, 2011, Initiative Legal Group filed the First Amended

-5-

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS, STAY OR TRANSFER

Consolidated Complaint in the <u>In re Taco Bell</u> action.  As set forth in that FAC, Duggan, and other named plaintiffs, seek individual and class-wide relief for the following alleged violations, which include, but are not limited to:

- Violation of Labor Code § 1194 (Unpaid Minimum Wages) for "All non-exempt hourly-paid employees of [DEFENDANTS . . .] from September 7, 2003 until the resolution of this lawsuit;"

- Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses, including but not limited to "costs of required shoes") for "All non-exempt hourly-paid employees of [DEFENDANTS . . .] who incurred business-related expenses and costs [including but not limited to "costs of required shoes"] that were not reimbursed from September 7, 2003 until the resolution of this lawsuit;"

- Violation of California Labor Code §§ 201 and 202 (Non-Payment of Wages Upon Termination) for "All non-exempt hourly-paid employees of [DEFENDANTS . . .] who were not timely tendered their wages upon termination of employment from September 7, 2004 until the resolution of this lawsuit;" and,

- Violation of California Business and Professions Code §§ 17200, et seq. seeking "restitution of the wages withheld and retained by Defendants during a period that commences on September 7, 2003" and which extends until the resolution of the lawsuit.

(RJN, Ex. 1.)

## C.    **Duggan's Second Lawsuit Against Taco Bell – This Instant Action – Duggan Class Action**

On September 21, 2011, nine months after his first lawsuit was consolidated with <u>In re Taco Bell</u>, Initiative Legal Group filed a putative class action complaint against Taco Bell Corp. and Taco Bell of America, Inc. in the San Francisco County Superior Court on his behalf ("<u>Duggan Class Action</u>").  (RJN, Ex. 2.)

In the <u>Duggan Class Action</u>, Duggan seeks to represent a putative class consisting of current and former non-exempt hourly Taco Bell employees who worked for Taco Bell in California since September 21, 2007.  Moreover, as demonstrated in the chart below, the <u>Duggan Class Action</u>, alleges substantially similar, indeed nearly identical, causes of action as that alleged in <u>In re Taco Bell</u>:

| | **In re Taco Bell** | **Duggan v. Taco Bell** |
| --- | --- | --- |
| Plaintiff(s) | Christopher Duggan et al | Christopher Duggan |
| Identical Counsel | Initiative Legal Group APC, interim lead class counsel | Initiative Legal Group APC |
| Claims | Violation of Labor Code § 1194 (Unpaid Minimum Wages) from September 7, 2003 until the resolution of the lawsuit; | Violation of Labor Code § 1194 (Unpaid Minimum Wages) from September 21, 2007 until the resolution of the lawsuit; |
| | Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses, including but not limited to "costs of required shoes") from September 7, 2003 until the resolution of the lawsuit; | Violation of California Labor Code §§ 221 and 224 (Unlawful deductions for required shoes) from September 21, 2007 until the resolution of the lawsuit; |
| | Violation of California Labor Code §§ 201 and 202 (Non-Payment of Wages Upon Termination) from September 7, 2004 until the resolution of this lawsuit; and, | Violation of California Labor Code §§ 201 and 202 (Non-Payment of Wages Upon Termination) from September 21, 2007 until the resolution of the lawsuit; and, |
| | Violation of California Business and Professions Code §§ 17200, | Violation of California Business and Professions Code §§ 17200, |

-7-

| et seq. seeking "restitution of the wages withheld and retained by Defendants" during a period that commences on September 7, 2003 and which extends until the resolution of the lawsuit. | et seq. seeking "restitution of the wages withheld and retained by Defendants" during a period that commences on September 21, 2007 and which extends until the resolution of the lawsuit. |
|---|---|

(*Cf.* RJN, Exs. 1 and 2.)

On December 2, 2011, Defendants removed the <u>Duggan Class Action</u> to this Court.  (RJN, Ex. 6.)

**III.   THE COURT SHOULD DISMISS, STAY, OR TRANSFER THIS CASE TO THE EASTERN DISTRICT IN DEFERENCE TO *IN RE TACO BELL***

**A.   <u>This Court Should Apply The "First-To-File" Rule Because The Eastern District In *In Re Taco Bell* Is Already Adjudicating Substantially Similar Issues As Those Presented In This Action</u>**

When cases involving the same parties and issues have been filed in two different courts, the first-to-file rule grants the second court the discretion to decline jurisdiction over the second case in the interest of efficiency and judicial economy. <u>Pacesetter Systems, Inc. v. Medtronic, Inc.</u>, 678 F. 2d 93, 94-95 (9th Cir. 1982). The rule "promotes judicial efficiency and prevents the risk of inconsistent decisions that would arise from multiple litigations of identical claims." <u>Meru Networks v. Extricom Ltd.</u>, No. C-10-02021 RMW, 2010 WL 3464315, (N.D. Cal. Aug. 31, 2010) <u>See, also, Sasco v. Byers</u>, No. 08-5641 JF (RS), 2009 U.S. Dist. LEXIS 36886, *13 (N.D. Cal. Apr. 14, 2009) (granting defendant's motion to dismiss under the first-to-file rule because claims substantially overlapped with counterclaims in a first-filed action) (citations omitted).  The first-to-file rule "serves the purpose of promoting efficiency well and should not be disregarded lightly." <u>See</u> <u>Pacesetter</u>, 678 F.2d at 95 (holding that district court's decision to apply the first-to-file rule was

-8-

only reviewable for an abuse of discretion).  "Restraint of the first-filed suit is made only to prevent wrong or injustice." <u>Kahn v. General Motors Corp.</u>, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  The Federal Circuit has made clear that District Courts should give deference to the first-filed action unless there is "sound reason that would make it unjust or inefficient to continue the first-filed action." <u>Meru Networks</u>, 2010 WL 3464315 *1.

As part of its inherent power to control its docket, a district court may dismiss, stay, or transfer a suit that duplicates another federal court suit. <u>See Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) ("As between [duplicative suits pending in different] federal district courts,... the general principle is to avoid duplicative litigation."); <u>Kerotest Mfg. Co. v. C-0 Two Fire Equip. Co.</u>, 342 U.S. 180 (1952) (same; applied to successive suits in different federal courts); <u>Cronos Containers, Ltd. v. Amazon Lines, Ltd.</u>, 121 F. Supp. 2d 461, 465 (D. Md. 2000) ("[A]s a general rule, the forum where an action is first filed has priority over the forum where a subsequent action arising out of the same nucleus of facts is filed"). This inherent power to dismiss a duplicative lawsuit fosters judicial economy and the "comprehensive disposition of litigation." <u>Kerotest Mfg. Co.</u>, 342 U.S. at 183.  Exercise of the court's inherent power also serves to protect defendants from "the vexation of concurrent litigation over the same subject matter." <u>Adam v. Jacobs</u>, 950 F.2d 89, 93 (2d Cir. 1991). Thus, to protect against the possibility of inconsistent rulings and the needless squandering of judicial resources, a court faced with a duplicative suit should dismiss it without prejudice, stay it, or transfer it.

The Ninth Circuit established the threshold criteria for the "first-to-file" rule in <u>Pacesetter</u>.  In applying the first-to-file rule, a court first looks at three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues.  <u>Pacesetter</u>, 678 F.2d at 95; <u>see, also, Meru Networks</u>, 2010 WL 3464315 *1; <u>L. Cohen Group v. Herman Miller, Inc.</u>, No. C

-9-

1   05-4476 SI, 2006 U.S. Dist. LEXIS 2301, *5-6 (N.D. Cal. Jan. 19, 2006) (granting

2   defendant's motion to transfer venue pursuant to the first-to-file rule because "a

3   complaint involving the same parties and issues has already been filed in another

4   district."); Alltrade, Inc. v. Uniwield Products, Inc., 946 F.2d 622, 625-626 (9th Cir.

5   1991) (granting a transfer in response to defendant's motion to dismiss, stay, or

6   transfer based on the first-to-file rule). Here, as discussed fully below, all of the

7   factors warranting dismissal, stay or transfer based on the first-to-file rule are

8   present; therefore, this Court should act pursuant to the rule and dismiss or stay the

9   instant action pending the outcome of in In re Taco Bell, or transfer the case to the

10   Eastern District.

11   **1.    In re Taco Bell Was Filed First**

12   There is no question that the actions that comprise In re Taco Bell were filed

13   before the instant action. As discussed in section II.B., *supra*, the Nave Class

14   Action, which includes Duggan as a named plaintiff, was consolidated with In re

15   Taco Bell on December 16, 2010. (See RJN, Exs. 3, 4, 5.) Duggan filed this action

16   in the Superior Court for the County of San Francisco on September 21, 2011.

17   (RJN, Ex. 2.) This action was then removed to this Court on December 2, 2011.

18   (RJN, Ex. 6.)

19   **2.    The Parties Are Identical**

20   Taco Bell Corp. and Taco Bell of America, Inc. are the defendants in both

21   cases and Duggan is a named plaintiff in both cases.[1] Moreover, the relevant

22   putative class definitions are substantially the same and involve overlapping claims

23   periods. Specifically, in both actions, Duggan purports to represent all non-exempt

24   hourly employees in California in his class claims against Defendants. (See RJN,

---

25   [1] The "identity of parties" element is also satisfied. Here, while other named

26   Plaintiffs have joined in the In re Taco Bell action, Duggan is a named Plaintiff in
     that case and the instant matter. In parallel proceedings "[t]he rule is satisfied if

27   some of the parties in one matter are also in the other matter, regardless of whether
     there are additional unmatched parties in one or both matters." Intersearch

28   Worldwide, Ltd. v. Intersearch Group, Inc., 544 F. Supp. 2d 949, 959 n.3 (N.D.
     Cal. 2008).

1  Ex. 1 at ¶¶ 23(a)-(e) and Ex. 2 at ¶¶ 16-18.)  The In re Taco Bell putative class

2  includes non-exempt California employees who worked for Defendants since

3  September 2003.  (Ex. 1 at ¶¶ 23(a)-(e).)  The putative class in the instant matter

4  includes non-exempt California employees who worked for Defendants since

5  September 2007. (RJN, Ex. 2 at ¶¶ 16-18.)  Accordingly, the putative class in the

6  instant matter is necessarily subsumed in the class proposed in In re Taco Bell.

7  Simply put, the claims period of the two classes of "non-exempt hourly employees

8  in California" overlap completely.  Therefore, there is no question that the parties

9  involved here substantially overlap.

10  ### 3.   The Actions Allege Virtually Identical Causes Of Action

11  The claims in both of these actions are also substantially similar.  The central

12  dispute in both matters is whether non-exempt employees were properly paid wages

13  and reimbursed for expenses as required by California law.  "The issues in the two

14  actions need not be identical for purposes of the first-to-file rule but must only be

15  substantially similar." See Walker v. Progressive Casualty Ins. Co., C 03656 R,

16  2003 U.S. Dist. LEXIS 7871, *7 (W.D. Wash. May 9, 2003).  "[S]light differences

17  in the claims asserted do not prevent application of the rule where the underlying

18  complained of conduct is almost identical." Id. at *7-8; see, also, Sasco, 2009 U.S.

19  Dist. LEXIS 36886 at *19 (staying case where issues were "substantially similar" as

20  they would "require adjudication of essentially the same issues raised by this

21  lawsuit").  The "first-filed" doctrine "is not a rigid or inflexible rule to be

22  mechanically applied, but rather is to be applied with a view to the dictates of sound

23  judicial administration." See Pacesetter, 678 F. 2d 95.  Just as the first-to-file rule

24  does not require the actions to have identical parties, it does not dictate that the

25  actions raise identical claims.  See Ward v. Follett Corp., 158 F.R.D. 645, 648-49

26  (N.D. Cal. 1994)

27  Here, the In re Taco Bell action and the instant action allege virtually

28  identical causes of action on behalf of substantially similar putative classes.  See

-11-

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS, STAY OR TRANSFER

1    chart *supra* in section II.C.  A comparison of the <u>In re Taco Bell</u> and <u>Duggan Class</u>

2    <u>Action</u> complaints makes two critical points crystal clear: 1) Duggan's claims in

3    both cases are based on allegations that Defendants failed to timely pay him and the

4    putative class all wages due and that Defendants improperly required that he and the

5    putative class incur costs for allegedly "required" shoes; and, 2) that Duggan's

6    allegations in both lawsuits arise out of the same transaction or occurrence and/or

7    nucleus of facts, specifically <u>each pay period</u> since September 2007, in which

8    Defendants allegedly withheld funds owed to Duggan.

9        While Duggan's reimbursement and unlawful deduction claims are couched in

10    different language, in both actions Duggan seeks the same ultimate outcome:  the

11    unpaid balance of his minimum wage compensation (including interest, costs and

12    attorneys' fees), restitution of the funds withheld for required shoes (including

13    interest, costs and attorneys' fees), and statutory "waiting time" penalties based on

14    Defendants alleged failure to pay all wages due upon Duggan's termination of

15    employment (including costs and attorneys' fees) for the same pay periods.[2]  The

16    fact that Duggan is seeking the same relief labeled as a different claim for relief

17    does not hide the fact that the issues and parties before both district courts are the

18    same.  Courts apply the first-to-file rule where "the underlying complained-of

19    conduct is almost identical."  <u>Dumas v. Major League Baseball Properties</u>, 52 F.

20    Supp. 2d 1183, 1188-89 (S.D. Cal. 1999), *vacated on other grounds*, 104 F. Supp.

21    2d 1220 (S.D. Cal. 2000).  Here, the "underlying complained-of conduct" (whether

22    the Defendants have properly paid their California non-exempt employees), as well

23    as the legal standards applicable to that issue, are substantially identical between the

24    first-filed action (<u>In re Taco Bell</u>) and subsequently filed case (the instant matter).

25

26    [2] The Duggan Class Action Complaint surreptitiously alleges that he was employed
by Defendants as a non-exempt non-management Team Member from April 2009 to

27    October 2010 and implies that Duggan is a former employee.  (RJN, Ex. 2 at ¶24.)
However, as demonstrated in detail in Defendants' concurrently filed Rule 12(b)(6)

28    and 12(f) motion, Duggan is a current employee and, therefore, lacks standing to
bring a statutory "waiting time" penalty claim based on his current employment.

-12-

1  The fact that different forms of relief are sought in the two lawsuits is irrelevant.  If

2  it were otherwise, litigation would only end when a party's imagination could no

3  longer conceive of different theories of relief based upon the same factual

4  background.  See Pacesetter, 678 F. 2d 95-96.  Accordingly, because all three

5  factors of the first-to-file rule have been met, a presumption in favor of the In re

6  Taco Bell action attaches.  Therefore, this action should be dismissed, stayed, or

7  transferred in favor of the first-filed In re Taco Bell action.

8  **B.     There Is No Reason Why To Decline To Follow The First-To-File Rule**

9          A district court may decline to invoke the "first-to-file" rule only where "there

10  are special circumstances which justify giving priority to the second-filed suit or a

11  showing of a balance of circumstances favoring the second-filed suit." J. Lyons &

12  Co. Ltd. v. Republic of Tea, Inc., 892 F. Supp. 486, 490 (S.D.N.Y. 1995).  Courts

13  have defined those "special circumstances" as "bad faith, anticipatory suit, and

14  forum shopping." EEOC v. Univ. of Pa., 850 F.2d 969, 972 (3d Cir. 1988); *accord*

15  Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 n.3 (5th Cir. 1983)

16  (finding first suit anticipatory and designed to forum-shop); Alltrade, Inc., 946 F.2d

17  at 628 (finding stay of identical litigation proper based on absence of equitable

18  considerations); First City Nat'l Bank, 878 F.2d at 79 (finding no exception to first-

19  to-file rule because plaintiff failed to show "special circumstances").  None of these

20  factors apply in this case.  Moreover, the instant action is only in the initial stages

21  and thus has not advanced further in litigation than the In re Taco Bell action.  For

22  these reasons, In re Taco Bell is considerably ahead of the litigation posture of this

23  action.  In the absence of "special circumstances," this Court should dismiss, stay, or

24  transfer this litigation.  See Cent. States Indus. Supply, Inc. v. McCullough, 218 F.

25  Supp. 2d 1073, 1091 (N.D. Iowa 2002) (" . . . in the absence of compelling

26  circumstances,' the first-filed rule should apply").

27  **C.     Dismissal Is Proper In The Instant Case**

28          The Ninth Circuit has made clear that a second-filed duplicative lawsuit may

-13-

be dismissed in the interest of comity and judicial efficiency.  In <u>Pacesetter</u>, the

Ninth Circuit affirmed the district court's dismissal of the second filed action when

"[n]o apparent bar existed to a presentation of [defendant's] claims and defenses

before the [first filed court]."  <u>Pacesetter</u>, 678 F. 2d at 96.  The Court determined

that the "original forum was capable of efficiently resolving all issues, and economic

use of both courts' resources resulted" from the second court's refusal to hear the

defendant's claims.  <u>Id</u>.  <u>See also</u> <u>Washington Metro. Area Transit Auth. v.</u>

<u>Ragonese</u>, 617 F.2d 828, 830 (D.C. Cir. 1980) (affirming dismissal of second-filed

action where the first-filed action presented "a closely related question"); <u>West Gulf</u>

<u>Maritime Assoc. v. ILA Deep Sea Local 24, South Atl. and Gulf Coast District of</u>

<u>the ILA; AFL-CIO</u>, 751 F.2d 721, 729 (5th Cir. 1985) (dismissing an action where

the issues presented can be resolved in an earlier-filed action).

As established above, the actions involve overlapping parties and factual and

legal issues.  Duggan could have properly asserted his claims in the <u>In re Taco Bell</u>

action.  Indeed, Duggan's claim became ripe well before he filed his first lawsuit

against Defendants in November 2010.  (<u>See</u> RJN, Ex. 2 at ¶42) (alleging an

improper wage deduction on December 17, 2007).  To proceed any further in this

Court is a waste of the parties' and the Court's time and resources.  In addition,

dismissal of this case would serve the policies of the "first-to-file" rule, namely,

comity and judicial efficiency.  Therefore, the parties and this Court should not

undertake the cost and time associated with two litigations when one will suffice.

**Dismissal is the appropriate procedural cure**.  However, in the alternative, this

Court should stay this lawsuit pending the determination of the prior action.

**D.**     **At A Minimum, Transfer To The Eastern District Is Warranted for**
          **Reasons of Comity and Judicial Economy**

In addition, for reasons of "comity and judicial economy," Defendants and

this Court should not be forced to re-litigate the same issues (on behalf of the same

parties) that have already been brought in the first-filed <u>In re Taco Bell</u> action.  <u>See</u>

-14-

1 | <u>Kelmar v. Mortgage Electronic Registration Sys., Inc.</u>, 2009 WL 1298540, at *1
2 | (N.D. Cal. 2009).  For example, after years of litigation, the <u>In re Taco Bell</u> court
3 | has already made significant rulings regarding the same putative class and claims in
4 | the instant action.  To have overlapping class action proceedings in different
5 | districts is a grossly inefficient waste of judicial resources that will result in
6 | piecemeal litigation and potentially conflicting rulings.  Such wastefulness frustrates
7 | the goals of the courts to conserve scarce judicial resources and promote the
8 | efficient and comprehensive disposition of cases, which would be defeated if
9 | multiple class actions could be brought on behalf of the same putative class
10 | regarding the same alleged injury.  <u>See</u> <u>Peak v. Green Tree Financial Serv. Corp.</u>,
11 | 2000 WL 973685, at *2-3 (N.D. Cal. 2000) (holding that first-to-file rule applies to
12 | class actions and dismissing second-filed class action alleging "similar issues").
13 | When the first-to-file elements are met, courts have transferred such duplicative
14 | cases to the first-filed court in order to conserve judicial resources, maximize
15 | efficiencies and ensure consistent rulings regarding substantially identical causes of
16 | action and parties.  <u>See</u> <u>Kelmar</u>, 2009 WL 1298540, at *1 (transferring
17 | "substantially similar" case to the Central District pursuant to the "first-to-file rule"
18 | which is a "generally recognized doctrine of federal comity which permits a district
19 | court to decline jurisdiction over an action when a complaint involving the same
20 | parties and issues has already been filed in another district") (citations omitted);
21 | <u>Persepolis Enter. v. United Parcel Service, Inc.</u>, 2007 WL 2669901, at *2 (N.D. Cal.
22 | 2007)(transferring action when "all three factors" of the first-to-file rule were met).

### IV.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT PER 28 U.S.C. § 1404(A)

25 |     Federal courts have broad discretion to transfer cases between districts: "For
26 | the convenience of parties and witnesses, in the interest of justice, a district court
27 | may transfer any civil action to any other district or division where it might have
28 | been brought."  28 U.S.C. § 1404(a).  As the United States Supreme Court explained

| DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, STAY OR TRANSFER

more than 40 years ago, the purpose of section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen, 376 U.S. at 616 (internal citation and quotation marks omitted). Discretionary transfers under this section "should be regarded as a federal judicial housekeeping measure" directed toward satisfying the concomitant goals of judicial economy and fairness. Id. at 636.

In deciding a transfer motion, courts first consider whether the matter "might have been brought" in the district to which transfer is sought. See Metz v. U.S. Life Ins. Co. in City of N.Y., 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). If satisfied, courts next consider whether a transfer would advance any one of three statutory factors: (1) the convenience of the parties; (2) the convenience of witnesses; or (3) the interest of justice. Id. While section 1404(a) calls for an "individualized, case-by-case consideration" of these factors in each action, Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)), the main factor typically to be considered is the interest of justice. See Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1565 (Fed. Cir. 1997). Indeed, "consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" Id.

Transfer to the Eastern District is appropriate in this case because it will serve the interest of justice. As explained, this action, which could have been brought in the Eastern District in the first place, essentially duplicates the In re Taco Bell litigation. The Eastern District already has made substantive decisions in In re Taco Bell - including denying the plaintiffs' motion for class certification for waiting time penalties (the same claim asserted in this action). To litigate this derivative action in this District makes no sense because, at minimum, the Court and the parties would have to duplicate efforts already made in In re Taco Bell and, worse, the Court would risk issuing inconsistent rulings in a substantially similar lawsuit involving

-16-

1 identical parties, including absent putative class members. This Court should
2 perform "judicial housekeeping" and send this litigation to the Eastern District.

3     As a named plaintiff and interim class counsel in the <u>In re Taco Bell</u> matter,
4 Duggan and Initiative Legal Group cannot genuinely argue that they would be
5 "inconvenienced" by transferring this action a relatively short distance from this
6 District to the Eastern District, especially when they are litigating the same issues in
7 the Eastern District. Moreover, any claim of "inconvenience" would pale next to the
8 interest of judicial economy served by transfer.

9 **A.**     <u>**This Action Could Have Been Brought In The Eastern District**</u>

10     Whether the instant case "might have been brought" in the transferee court
11 (the Eastern District) is a statutory prerequisite to the transfer of venue. 28 U.S.C. §
12 1404(a). The Supreme Court has interpreted this provision to require that the
13 transferee court have jurisdiction over the parties and the dispute, and that venue be
14 proper there at the time suit is filed. <u>See</u> <u>Hoffman v. Blaski</u>, 363 U.S. 335, 343-44
15 (1960). Here, there is no question that the Eastern District: 1) has personal
16 jurisdiction over the parties; 2) has subject matter jurisdiction over plaintiff's claims;
17 and, 3) that the Eastern District is a proper venue.

18     Personal jurisdiction in federal court is determined as a matter of the forum
19 state's local law. <u>See</u> Fed. R. Civ. P. 4(k)(1)(A). Here, both the transferor court
20 (this District) and the transferee court (the Eastern District) are located in the same
21 state, and the same law applies. Thus, insofar as this Court has personal jurisdiction,
22 so too does the Eastern District. In particular, plaintiff avers that he is a resident of
23 California and that his causes of action arise out of Defendants' contacts with
24 plaintiff in California. Personal jurisdiction is unquestioned. <u>See</u> <u>generally</u> <u>Burger</u>
25 <u>King Corp. v. Rudzewicz</u>, 471 U.S. 462, 473 (1985) ("[A] forum legitimately may
26 exercise personal jurisdiction over a nonresident who 'purposefully directs' his
27 activities toward forum residents.").

28     Subject matter jurisdiction also is proper in the Eastern District for the same

1  reason that it is proper before this Court: federal diversity jurisdiction, as amended

2  by the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), extends to this suit

3  because there is minimal diversity between the putative class and Defendants; the

4  putative class consists of hundreds of members; and the amount in controversy

5  exceeds $5 million dollars.  (RJN, Ex. 6.)

6       Finally, venue is proper before the Eastern District because Defendants are a

7  resident there for purposes of the federal venue statute. See 28 U.S.C. § 1391(a).  A

8  corporation is a resident of "any judicial district" where it would be subject to

9  personal jurisdiction if the district were a separate state. Id. at § 1391(c).  Here, it is

10  undisputed that Defendants do business throughout California, including the Eastern

11  District, and that Plaintiff alleges that the events giving rise to his claims occurred

12  statewide.  Because Defendants have sufficient "contacts" with the Eastern District

13  for purposes of personal jurisdiction, venue is proper there.  28 U.S.C. § 1391(c).

14  **B.**     <u>**This Action Should Be Transferred To The Eastern District**</u>

15       Once it has been established that litigation "might have been brought" in the

16  transferee district, the decision to transfer venue is committed to the sound

17  discretion of the trial court. <u>Commodity Futures Trading Comm'n v. Savage</u>, 611

18  F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer

19  involves subtle considerations and is best left to the discretion of the trial judge.").

20  Of "predominant importance" to this analysis, as noted above, is "[t]he question of

21  which forum will better serve the interest of justice." <u>Wireless Consumers Alliance</u>

22  <u>v. T-Mobile USA, Inc.</u>, 2003 WL 22387598, at *4 (N.D. Cal. 2003) (*citing* <u>Pratt v.</u>

23  <u>Rowland</u>, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991)).  When considering the

24  "interest of justice," courts generally look at which forum will best serve judicial

25  economy and efficiency, as well as which forum has a direct relationship with the

26  parties and causes of action in the lawsuit.  See <u>Decker Coal Co. v. Commonwealth</u>

27  <u>Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986).  In this case, both the transferor

28  forum (this District) and the transferee forum (the Eastern District) have a direct

1  relationship with the parties and claims at issue, but matters of judicial economy

2  strongly tip the scale toward transfer to the Eastern District.

3  **1.    The Eastern District Has Invested Significant Time and Resources**

4  **into In re Taco Bell**

5  This litigation has been before this Court for only a few days, but In re Taco

6  Bell has been in the Eastern District for several years. As detailed above, in section

7  II.B., since September 2007, the Eastern District started handling the cases that

8  constitute In re Taco Bell, which raised substantially similar wage-and-hour claims

9  as this action, purported to represent a substantially similar class of non-exempt

10  employees as this action, and sought to recover the same forms of relief as sought in

11  this action. If this duplicative action, which involves the same claims, parties, and

12  counsel, now were to proceed in this District anew, this Court would not only risk

13  issuing inconsistent rulings on the same claims between the same parties, but also

14  would have to needlessly reinvent the wheel in this litigation, coming up to speed on

15  a whole set of facts, legal issues, and discovery matters with which the Eastern

16  District Court is already intimately familiar. Requiring this Court to expend such

17  resources, while at the same time letting the Eastern District's time and accrued

18  knowledge go to waste, would run counter to the very purpose of discretionary

19  transfers under section 1404(a). See Dorado v. Laborers Pension Trust Fund for N.

20  Cal., No. CV F 06-0394 AWI LJO, 2006 WL 2402006, at *2 (E.D. Cal. Aug. 18,

21  2006) ("Transfer rulings under 28 U.S.C. § 1404(a) generally turn on ... whether

22  transfer will avoid duplicative litigation, effect judicial economy and prevent waste

23  of time and money[.]").

24  This Court's decision in Wireless Consumers Alliance, Inc. v. T-Mobile USA,

25  Inc., *supra*, is particularly instructive. In that case, a nonprofit group filed a putative

26  class action lawsuit against T-Mobile in Alameda County Superior Court on behalf

27  of "the general subscribing public," alleging that terms in T-Mobile's customer

28  service agreement ("CSA") violated the California Business and Professions Code.

-19-

1   T-Mobile removed the action to the Northern District of California, and

2   subsequently moved to transfer venue to the Central District.  T-Mobile sought

3   transfer to this District because, in the prior year, T-Mobile subscribers represented

4   by the same counsel had filed an identical class action lawsuit in Orange County

5   Superior Court, <u>Gatton v. T-Mobile USA, Inc.</u>, alleging the same violations of the

6   Business and Professions Code, which T-Mobile removed to the Central District.

7   The plaintiffs in the <u>Gatton</u> action dismissed their claims after Judge David Carter

8   granted T-Mobile's motion to compel arbitration.

9           In its motion to transfer the later-filed <u>Wireless Consumers</u> action to the

10  Eastern District, T-Mobile argued that "the current action is <u>Gatton</u> in disguise, with

11  the same plaintiffs and attorneys, challenging the same provisions of T-Mobile's

12  CSA, and alleging verbatim violations of the same Business and Professions

13  Codes," that "plaintiff double-filed its case to evade adverse rulings by the Central

14  District and to give <u>Gatton</u> another chance," and that the "interest of justice" favored

15  transfer to the Eastern District.  2003 WL 22387598, at *2.  Judge Patel agreed,

16  recognizing that "[t]ransfer is proper if a like action has been brought by the same

17  plaintiff against the same defendant in another district, or another division of the

18  same district."  <u>Id</u>. at *4 (<i>citing</i> <u>Jacobson v. Hughes Aircraft Co.</u>, 105 F.3d 1288,

19  1301 (9th Cir. 1997)).  Judge Patel specifically found transfer appropriate in that

20  case because <u>Wireless Consumers</u> and <u>Gatton</u> were "intimately related, if not

21  identical;" they had "identical plaintiffs, namely all T-Mobile subscribers" and

22  "nearly all of the claims" in <u>Wireless Consumers</u> "were copied verbatim from

23  <u>Gatton</u>. "  2003 WL 22387598, at *5.  Given this similarity, Judge Carter, the

24  presiding judge in <u>Gatton</u>, was "almost guaranteed" to receive <u>Wireless Consumers</u>

25  following transfer, which would "save judicial resources" and avoid "the risk of

26  conflicting rulings on the same is-sues."  <u>Id</u>. at *6.  As this Court reasoned, "time

27  and effort" should not be "wasted in the course of rehearing and reestablishing the

28  facts and circumstances of this case," just to "reiterate what Judge Carter had

-20-

DEFENDANTS' NOTICE OF MOTION AND MOTION
                                              TO DISMISS, STAY OR TRANSFER

1  already stated." Id.

2      Numerous decisions are in accord with this Court's reasoning in Wireless

3  Consumers.  Courts consistently hold that where the transferee forum has already

4  handled similar litigation between the same parties, transfer is appropriate. E.g., Eli

5  Lilly & Co., 119 F.3d at 1565 (finding no abuse of discretion in transfer of venue;

6  "[T]he interest of judicial economy may favor transfer to a court that has become

7  familiar with the issues."); Madani v. Shell Oil Co., No. C07-04296 MJJ, 2008 WL

8  268986, at *2 (N.D. Cal. Jan. 30, 2008) (granting motion to transfer class action to

9  Central District of California because that court had presided over similar class

10  action involving same parties for "more than three years" and thus was "more

11  familiar" with "underlying factual contentions ... common to both actions," while the

12  Northern District "would have to invest significant time and resources to reach a

13  similar level of familiarity"); Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.

14  Supp. 2d 357, 363 (W.D.N.C. 2003) (granting motion to transfer case to Western

15  District of Oklahoma based on related litigation there; "[I]t is ... expedient to allow a

16  court that is already familiar with [plaintiff's] essential arguments to adjudicate this

17  case as well."); LG Elecs., Inc. v. Advance Creative Computer Corp., 131 F. Supp.

18  2d 804, 815 (E.D. Va. 2001) (granting motion to transfer because "very similar"

19  actions had been adjudicated there and that court had "already invested substantial

20  time and energy" in those "previously litigated claims").

21      The rationale adopted in Wireless Consumers and these similar decisions

22  directly applies here.  This putative class action (brought by the same named

23  plaintiff and class counsel) raises substantially similar overlapping wage-and-hour

24  claims as those brought in In re Taco Bell and purports to represent a substantially

25  similar class of non-exempt employees.  If transferred to the Eastern District, it is

26  highly likely that this action would be re-assigned to the judge presiding over In re

27  Taco Bell, thereby preserving the judicial resources already expended on that

28  litigation and avoiding the risk of inconsistent rulings.  On the other hand, keeping

-21-

DEFENDANTS' NOTICE OF MOTION AND MOTION
                                                TO DISMISS, STAY OR TRANSFER

1  the case in this District would force this Court to start from scratch, duplicating time

2  and effort already invested by the Eastern District, and needlessly wasting this

3  Court's limited resources. On those grounds, the "interest of justice" clearly supports

4  a transfer.  See Samsung Elecs. Co. v. Rambus Inc., 386 F. Supp. 2d 708, 722 (E.D.

5  Va. 2005) ("Judicial economy and the interest of justice favor a venue which has

6  already committed judicial resources to the contested issues and is familiar with the

7  facts of the case.").

8      **2.**       **This Court Has No Greater Interest in This Litigation Than The**

9              **Eastern District**

10       In addition to judicial economy, courts reviewing a transfer motion also

11  consider which forum has a greater interest in resolving the parties' dispute. See

12  Decker Coal Co., 805 F.2d at 843.  The "interest of justice" may favor one particular

13  judicial district over another if that forum has a direct relationship with the parties

14  and causes of action. Id. This analysis generally focuses on the parties' "contacts

15  with the forum" and where the relevant events in the com-plaint took place, e.g.,

16  "where the relevant agreements were negotiated and executed." Jones, 211 F.3d at

17  498-99.  While a particular forum's connection to the litigation may affect the

18  "interest of justice" in some cases, it is of no consequence here.  Duggan alleges that

19  Defendants have violated wage-and-hour laws throughout the State of California,

20  including the Eastern District, and proposes a statewide class of non-exempt

21  employees on that basis.  Neither this District nor the Eastern District has any

22  greater interest in resolving this dispute than the other, as both have a direct

23  relationship with the parties and claims. See, e.g., Italian Colors Rest. v. Am.

24  Express Co., No. C 03-3719 SI, 2003 WL 22682482, at *3 (N.D. Cal. Nov. 10,

25  2003) (rejecting plaintiff's argument that local interest favored denying transfer of

26  class action because "more of the relevant... agreements" were formed in the

27  transferor forum; plaintiff "purport [ed] to act on behalf of a nationwide class of

28  merchants," and some of those merchants entered into "identical agreements" in the

-22-

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS, STAY OR TRANSFER

1  transferee forum).  Accordingly, because the "relationship" factor is neutral in this

2  case and matters of judicial economy strongly favor the Eastern District, the Court

3  should transfer this action to that forum in the "interest of justice."

4  **C.**     **Transfer Will Not Prejudice or Unduly Inconvenience Duggan**

5        Before granting a motion to transfer venue in the "interest of justice," courts

6  generally consider whether transfer will unduly prejudice or inconvenience the

7  opposing party.  See 28 U.S.C. § 1404(a).  Factors reviewed under this analysis

8  include plaintiff's choice of forum, the difference in travel time and litigation costs,

9  and the availability of witnesses and sources of proof in the transferee forum.  See

10  Jones, 211 F.3d at 498-99.  None of these considerations tips the scale toward this

11  District retaining this action.

12        **1.**     **Plaintiff's Choice of Forum Is Entitled to Little Deference**

13        A plaintiff's choice of forum is generally given substantial weight in deciding

14  the balance of convenience and the propriety of transfer.  See Decker Coal Co., 805

15  F.2d at 843.  However, the weight of the plaintiff's selection is not boundless. More

16  importantly, "the Ninth Circuit, 'like other courts, has noted that the weight to be

17  given the plaintiff's choice of forum is discounted where the action is a class

18  action.'" Metz, 674 F. Supp. 2d at 1146 (*quoting* Saleh v. Titan Corp., 361 F. Supp.

19  2d 1152, 1157 (S.D. Cal. 2005)); see, also, Lou v. Belzberg, 834 F.2d 730, 739 (9th

20  Cir.1987) ("[W]hen an individual brings a derivative suit or represents a class, the

21  named plaintiff's choice of forum is given less weight.").

22        Here, Duggan seeks to represent a putative class of current and former non-

23  exempt hourly employees throughout the State of California.  His individual choice

24  of forum therefore receives very little deference, and in any event, does not override

25  the countervailing interests of judicial economy that strongly favor transfer of this

26  action to the Eastern District.  *Cf.* In re TS Tech USA Corp., 551 F.3d 1315, 1320

27  (Fed. Cir. 2008) (reversing denial of motion to transfer venue where trial court

28  "erred in giving inordinate weight to the plaintiff's choice of venue").

-23-

DEFENDANTS' NOTICE OF MOTION AND MOTION
                                                                TO DISMISS, STAY OR TRANSFER

### 2.    Litigating in the Eastern District Will Not Unduly Burden Duggan

First, as with his choice of forum, Duggan's residence as a class representative is entitled to little deference in the transfer analysis.[3] The fact that this District is Duggan's "home forum" and therefore more convenient for him personally is immaterial.  See, e.g., Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997) (granting motion to transfer venue for class action lawsuit; "[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant."); IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A., 730 F. Supp. 1278, 1282 (S.D.N.Y. 1990) (same; "[T]he accidental residence of the named plaintiff [in a representative or class action] is discounted in weighing the transfer factors.").

Second, any inconvenience for Duggan of traveling to the Eastern District from this District would not override the otherwise prevailing factors in support of transfer.  See Eli Lilly & Co., 119 F.3d at 1565.  Convenience of the parties is a "subordinate" consideration where, as here, the "interest of justice" and judicial economy strongly favor transfer to another district.  Wireless Consumers Alliance, 2003 WL 22387598, at *4.  Indeed, Defendants are unaware of any other "cost" that Duggan would bear following transfer to the Eastern District, other than travel to the courthouse.  This "inconvenience" does not outweigh the savings in judicial economy that will result from transfer.  See Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009) (convenience of parties and class members outweighed by interest of justice where trial judge in transferee venue was handling an identical case and therefore had a "leg up on the legal and factual issues presented").  Moreover, such inconvenience cannot really be an "inconvenience" when Duggan is already litigation in the Eastern District, and has been for some time.

Third, and perhaps most importantly, transfer of this action to the Eastern District will not prejudice Duggan's ability to "access" relevant sources of proof or "compel attendance of unwilling non-party witnesses."  See Jones, 211 F.3d at 498-

---

[3] Duggan resides in San Francisco County (RJN, Ex. 2 at ¶7)

W02-WEST:1MMN1\404200303.5

99. Duggan alleges statewide wage-and-hour violations and seeks to represent a putative class of current and former non-exempt Taco Bell employees throughout the State of California.  Any relevant witnesses, documents or other discoverable sources of proof related to Taco Bell's statewide wage-and-hour policies and practices will be available to Duggan through discovery requests propounded on Defendants, without subpoena, just as they would be in this District.

Furthermore, to the extent Duggan may seek to compel attendance of unwilling, non-party witnesses with knowledge of his individual claims, such witnesses will be just as accessible by subpoena power following transfer to the Eastern District.  For local depositions, non-party witnesses may be served with subpoenas issued by this District.  See Fed. R. Civ. Proc. 45(b)(2)(A).  For trial, a subpoena issued by the Eastern District will carry the same force and effect as one issued in this District.  California has a state statute permitting statewide service on residents, see Cal. Civ. Proc. Code § 1989, so non-party witnesses in this District will be subject to service of trial subpoenas issued in the Eastern District.  See Fed. R. Civ. Proc. 45(b)(2)(C).  Accordingly, transfer is appropriate under 28 U.S.C. section 1404(a).

## V.    CONCLUSION

For the foregoing reasons, in the interest of judicial economy and comity, Defendants Taco Bell Corp. and Taco Bell of America, Inc. respectfully request that the present action be dismissed, or in the alternative stayed or transferred, in deference to the In re Taco Bell action in the Eastern District.

Dated:  December 9, 2011        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____/s/ Morgan P. Forsey_____

TRACEY A. KENNEDY
MORGAN P. FORSEY
Attorneys for TACO BELL CORP. and
TACO BELL OF AMERICA, INC.

-25-